The late Justice Thomas Hoffman, who was a very good friend of ours, and getting there from downtown is a challenge, as you can imagine. So I would just like to point out that we have read the briefs, the record, and the cases that were cited. So you can keep your discussion about the facts to a minimum. And we always suggest that people hit their high spot first, take your strongest issue and start with that one and then work your way down as you have time to do it. So that having been said, Ms. Mitreva, you may begin. We are the respondent here. Oh, I'm so sorry. That was wrong. I had the backwards. I apologize. Mr. Napustel. Yes. Good afternoon. My name is Nick Napustel and I represent the plaintiff appellants in this matter. I think the overarching question for us to decide is what is the lesson that the three generations of attorneys that participated in this trial should take from this case? And I urge that caution is warranted in how we answer that question because the jury system trial we've all jury trial system, we've always recognized that it is sacred of paramount public importance and that it's of paramount importance that the public have faith in the results of our jury trial system. I think as someone who is so involved in that process, it's easy for me to lose sight of the fact that in a lot of ways, what happens at the daily center every day is remarkable where citizens are peacefully resolving their disputes. And that is something that isn't necessarily the natural order of things and something that does not occur and certainly not with the fairness that occurs here in some parts of the world. And so I want to stress that this is not a plaintiff versus defendant issue either. When I rely upon Croft and Brunchen, those are attorneys that I don't know personally, but that I have looked up to for a long time professionally and know their work and have had success that I would like to emulate. But I think that there can be an ends justify the means mentality that can creep in to the minds of attorneys on both sides of the V at times. And I think it degrades our system of justice. This type of misconduct will reoccur if there are no consequences. You say misconduct. The judge didn't find anything harmful here. And if it was as egregious as your brief states it, then why didn't you ask for a mistrial? So let me take the question in two parts. Well, I guess let me answer the mistrial question first. It is because our evidence was so strong that rightly or wrongly, I believed that asking for a mistrial would work to the benefit of the defendants rather than us. And I think it's unfair to put the plaintiffs in that position where we are required to judge in real time whether misconduct is successful or not, or is working or not when we are not the party that was in the wrong. And I will also state at certain times, you know, we have this intentional violation of the motion in Lemonade during opening. You know, at that time, I don't know that conduct is going to continue to reoccur. And then. But you throughout your brief, I mean, you raised several issues and it seems at a time what you're telling me is that you were going to be looking at the reverse of what you just said, is that you can gamble, see how it ends, and then you can ask for a new trial so that you get to have another bite if you didn't like what happened. Well, I think that. It's not gambling to. It's it's not gambling to hope that the jury follows their instructions and to hope that your evidence has been persuasive. And I think that it has been it's well established law that. It's been stated that reversal will follow as a matter, of course, when there is intentional and repeated misconduct. But again, it's harmless. The judge found it harmless. And you have a high burden as a discretionary call. Your burden is quite high. And he did everything when objections were raised, immediate responses from the court and said, you know, you don't ignore this or whatever. Gave instructions about it. You know, look at the evidence. I mean, the case, he got a pretty short reign on everyone. It was on top of it. And even at the conferences and the motion eliminating, I said, you know, something happens, you tell me and we'll have a side. He was prepared for various things that could happen. And so and he was prepared. And so when that happens, we're trying to find out here, you know, what went wrong, that that this case should be treated any differently than any other. And so I would say that it is more than a century ago in Bale versus Chicago Junction, the Illinois Supreme Court recognized that in the arguments that uses argument willfully persisted in of this type and it was intentionally improper argument seeking to inflame the passions of the jury because the court said it is in of itself sufficient reason for granting a new trial. Yeah, but you're assuming you make the assumption it was intentional. I don't think there was a finding of intentionality. But where is that? Where did the judge find that? I don't I mean, in fact, just the opposite. The judge found that you your side called for some of this to happen and you're opening. You raise some of these issues and you open the door. I'm well, he said that at first or an opening and then sustain those objections later, putting that when it comes to some of the reputation evidence, putting that aside, I objectively looking at the record where the defendant created a PowerPoint. I objected. The court sustained the objection. They showed it during opening anyways, and then continue to read from it. Despite the sustained objection, I have trouble finding that anything except intentional. He gave an instruction and the law says we expect jurors to abide by it. You know, where where have you shown any kind of harm here for any of this? I mean, he did say after that, he said, move on. Right. So move on. And, you know, if it hadn't been removed and you had asked to be removed, you could have said something else. But I mean, in many of these instances, when I looked at the record, there were no objections made at the time. I think that for the case of my brief, where even in cases where there were no objections made at all, reversal has followed. And I think it depends on the situation, right? It's the case by case context matters. And again, here there was a short leash and the judge was very involved in listening carefully to what was happening and reacting to whatever somebody said, something that made an objection or said something that shouldn't have been said. But I do think that in just focusing on the prejudice. I think that and this and this gets down to what I try to get into, too, in the amended reply that the motion is pending, is that I think it's important to distinguish between attorney misconduct and trial court error. We are always going to have an imperfect trial process. All humans err. There's things we can't control, but we can control the consequences for when I'm an attorney, an attorney intentionally subverts that process. That has been well recognized for a long time. The intent was the deciding factor for reversal in Croft, Cadeco, Paulson and Cecil. I mentioned bail more than a century ago, saying that it's in and of itself sufficient reason for granting a new trial. Again, it all has to do with the context of this case. I mean, what what is egregious here? What is so egregious? Calling counsel a young young man. And so I think you're pretty petty. I mean, and that's what I want to distinguish is I wasn't offended by the comments, and this isn't about me. The reason that I find that conduct to be egregious is because I believe it was tactical. And the tactic is you make counsel the villain so that you can. I was that a villain by saying young men when the other side has two young men at counsel table as well. Because it wasn't just the young man isn't the only comment. It's also that I had the chance that I could have chosen to to present this case any way that I wanted to when really I couldn't, because the facts of the case that that were the reason that the negligence proximately caused her not to be buried was the deception. I don't get to choose the facts of the case that's presented. And it was also there's nothing worse than an attorney that promises something and fails to deliver. It's all of those things paired together with the effect, with the request, the the the plain and explicit request that the jury consider sympathy, that when you take all of that together. I think it's impossible to say that the jury, that it's impossible to say that. It's impossible to say with any certainty that this did not affect the jury's verdict. And I think that we're never going to know that, because as you say, and you're right, we can't get into the jury's mind in the in the room. So we have to go based on other things. And where are those other things? I mean, when you talk about the. The CEO being on the jury bias, you didn't show any bias. Where's the bias that that person had any kind of bias? I mean, it was it's all speculation on your part. Based upon an article. I think that addressing the heart of the matter first is the plaintiffs, and I think this is a fundamental right in our jury trial system, is that every litigant has the right to have their case decided about based on the law and the evidence and not based upon passion, prejudice or sympathy. So the question becomes in these cases where and I agree with you. I even when you can't invade the sanctity of the jury room and there's good policy reasons for that, too, right, we that we have still suffered a legal wrong where our right to have our damages assessed by a jury that was not subjected to an intentional effort to sway them with passion, prejudice. How do you know there was any passion or prejudice at all with regard to the verdict? You know, you don't like the amount. You won the case. I mean, the fact is you won. What your real concern is, and you cite the case in Chicago, whether it's three million dollars in a much harsher situation, but you don't like the amount that was awarded. That to me, reading your brief is why we're here. And so you want another chance at that. And you think somehow, you know, the low amount when when the judge said there was really credibility problems by the witnesses for the plaintiffs. And I think you call it a minus five out of 10. So considering that, maybe you did extremely well under the circumstances where credibility is an important factor. And how can we we can't do much with that credibility finding by the court, we weren't there. And I think that regarding the credibility finding, I think here it's important to distinguish between the argument of that's that's often made where the the verdict itself was against the manifest way of the evidence. Right. That is a jury error at heart. It's that the evidence wasn't followed in a way that the trial court can say that it was manifestly against the manifest weight of the evidence. And in making those kinds of credibility determinations, I think deference is appropriate. It's abuse of discretion no matter what. But the the the rationale there is is apt. I would say that sometimes the result that doesn't make sense on paper when you're just reading the transcript, the trial court who was there and thinks that the jury got it, not that they got it right, but that wasn't its manifest way, the evidence can view the credibility in a way that obviously we cannot do on review. But when I'm not making the argument that the award itself was against the manifest weight of the evidence because it's emotional distress and different juries could assess that evidence. Different ways. I think it's particularly important to look at the process. And more importantly, that. Just as an integrity, when we're talking about the integrity of our trial system, right, when you say that, not that you said who cares you want, I mean, to be flippant like that, but when you say, well, counsel, your clients won the trial, you're not happy with damages. That is a legal injury that is different in degree and not kind. If they'd won one dollar, but were entitled to one hundred thousand, they've lost nine hundred ninety nine, nine hundred ninety nine thousand dollars. The fact that they were able to get a verdict for a single dollar means little. And I think with that recognition, I understand the argument that I'm making. I haven't been able to find a case where the plaintiff's counsel has made it before. But what we're talking about, the loss is the opportunity of our rights to have our damages fairly assessed. And so how do we we don't know? And we're not in the business of comparing cases with regard to judgments. And the fact that there are various judge around the country, every case is different. Every like you said, every jury is different. Every judge is different. So a lot depends on who's in the room and what happens there and how it's conducted. And and here, based upon what they heard, they came out with forty thousand dollars, ten thousand for each plaintiff. Again, how what is there? What case? What if we are to rule in your favor? What is it that's going to cinch it for you? And so I think the intent was the deciding factor in Conegro, Paulson and Cecil, as I mentioned, and in all of those cases, the language used was that the prejudice wasn't de minimis or that the record couldn't establish a lack of prejudice. I think that it's. Unwise or or I would suggest unfair as well to put the burden on the on the party that did not commit misconduct to to affirmatively prove this prejudice when when there's literally no way for us to do so. But that misconduct, again, that's a conclusion. And again, the judge never found that, you know, both sides did things during this trial and said things and opened doors and so forth. You know, nobody's been accused of. Misconduct, as I could see it. And for sure, it's that's an open question of the judge and found, again, we would have to find that in order for you to win. And how do we go there? How do we even get there on this record? And so, I mean, I think first, I'm just talking about the standard to be applied is that. We have always recognized that a party should not profit from wrongdoing, and I think that it is. Now, let me interrupt you. So we know the standard. We know the difference. Give us three points that say in this record that is the improper prejudice, that is the impassion coming out from the jury. This is how we know this 10,000 apiece is wrong because they were so inflamed by X, Y and Z. Give us those three points. Absolutely. So and not to at risk of dodging your question, where we're talking about the verdict amount itself. I can't do that. But but the three points of where we have this intentional effort in order to achieve that result that very well may have been successful are open statements with what happens with the. The previously barred evidence about them, they should have gone elsewhere. The question. So just let me stop you. So showing the one screenshot of the PowerPoint, correct? Showing the PowerPoint. Is that what you're saying in opening? Yeah, just in the fact that they did the test, the prior testimony of the comment, not just the PowerPoint, but the testimony, the comments, all of the stuff that had been previously barred about, they should have gone elsewhere. That was that was. So forth, an opening, it is that what you said they should have gone elsewhere or could. I think they could have should have distinction. My my motion eliminates it could have. And the topic was entirely barred. I don't know that distinction. I I know I just said should have. I don't know that that distinction makes makes a difference in the or should make a difference in the analysis. This the second, I think. A really prejudicial moment of trial came when Spencer Lee Jr. gave his long answer about wanting to quit the funeral business, getting his affairs in order when he thought he was going to die. That testimony had no no plausible relevance to anything except for to inflame the sympathy of the jury. And regardless, the trial court overruled my objection, regardless of whether. He erred in overruling that objection, thinking that the answer was going to be different. Defense counsel had to have known the answer that was going to come before he asked that question. He told his client to take a drink of water before he did it. That was their grand finale of the day. And then in closing for my. So how is that wrong? I mean, we we see courtroom theatrics, right? This is the defendants in this case telling their story. You tell a story. Your client tells a story. How is that so prejudicial that we should reverse this verdict and send you back for a new trial? Oh, and I think that and again, it's not just that. It's that we have all of these things together in it. And I will point out that this is not a two week medical malpractice trial where all this occurred. This is a one day trial where the openings and all the evidence occurred in a single day and closings happened the following morning. And there's just so much error, motion, motion, limiting violations and then just improper arguments that attorneys shouldn't make anyways in that confined period that even on just the regular cumulative error standard of might have affected the verdict. Of course, it might have affected the verdict. And the verdict is the amount. It's not just that we won because. And I think that that is especially in a case like this, where the evidence on. The question of, well, your mom died, you were you had emotional distress. Why was it worse? My my my plaintiffs, my witnesses sometimes struggled with making that distinction, and which I think is the point that the trial court brought out is that that that evidence, that that question was very closely balanced. And so it was particularly important for us to have a trial where the jury, whatever conclusion it came to. Right. Maybe they wouldn't have agreed with how I saw it. But but but assessed that that damage, according to the law and the evidence and the fact that the record we can. I think we're asking the wrong questions of how can I say it? Was the result of a passion or prejudice as the party that did not. Commit, I guess, was it were misconduct, but intentionally violate motions, eliminate, intentionally make arguments designed to to inflame the jury's passions or sympathy. It should not be regardless. And also where you come down on the facts on this case. I think it's important that that standard not be we not depart from the well-established law of that. We have to affirmatively show prejudice, particularly in these cases where we're talking about an attorney's conduct and not just a trial court error. There is a case. How about when you open the door right from the get go, an opening statement? You you want an emotion and then you open the door to allow in things that you didn't want to come in in the first place. And the court warned you about that when it granted the motion and said, but if if they open the door, it's coming in. And that's exactly what happened. It was if I made improper character attacks by calling them liars or castigating their character, which I never did. All I did is I said the facts of the case, which were directly relevant to proximate cause in that if it wasn't just the delay in the death certificate, if my clients hadn't lost trust in the funeral home, that the ultimate damage of her not being cremated would not have occurred. And so these are facts of the case where that I didn't personally attack anyone. I didn't call anyone a liar. I said they lied and then said what that lie did. And those and I think the distinction to draw here is I don't think one, I don't think I was opening the door when I did it. It wasn't against the motion in Lemonade that was not to call him a liar. And it was directly relevant to the case. And so that's and so that's the difference, I think, in what's being. It's not that I also attacked their character and did something improper, too. I didn't do it. I don't think anything improper in this trial and have never really been accused of doing anything improper. I would have to look at the record again. I'm not even sure the bottom line and what Justice Gammerth is getting at. I mean, you have to show that the judge abused his discretion. Where have you shown that? Thank you for asking that. I think that the where I've shown that is during the post trial motion hearing where I am trying to where I'm urging the might have affected the verdict standard and the trial court is rejecting it. Whenever there is a. When the trial court's discretion is frustrated by an improper interpretation of the law, that is always an abusive discretion. But you make any connection that isn't true under these facts. And I apologize, Justice, I don't think I don't see how you made a connection improper under the law, but I don't I don't see that. I mean, you need to. What does the judge do? How was he wrong as a matter of law? You said, yes, if he was mad, it was wrong as a matter of law. I agree with you. But where was he wrong as a matter of law? Well, and I think it depends on how this court comes down on the standard that I'm saying should apply. If the the holding here is or what you decide is you follow the law, as I've tried to explain it, and that I think the law is in that reversal should follow in these cases, particularly of of intentional attempts, unless the record demonstrates a lack of prejudice, whatever. However, you want to phrase those words. If that principle is accepted here, that's not the standard that was applied by the trial court, and if it had, I don't think we would be here. And so that would be the error of law. Now, if you think that I am misstating the law and the trial court had the law correct, well, then that's not an error of law. I understand that. But I think that. That. I apologize, I just lost my my thought, but I may have a moment. Where it becomes so important on having these standards, I think, is in in which direction do we want our jurisprudence to start to bend? I think that there's always going to be and in a lot of ways, the zealous zealous advocacy of your client. You know, requires you to make the arguments of the law to your advantage, and sometimes that law, that line is not clear, and sometimes that line is intentionally crossed. And so if we have the law being that whenever an intentional argument is made, right, putting aside whether you believe the record supports in this case. But if the law is that whenever a party, an attorney intentionally commits misconduct that may or may not have prejudiced the jury, there cannot be reversal when the party that was wronged cannot prove something that's impossible to prove because we cannot invade the sanctity of the jury room. Then that is a legal wrong without any kind of recourse. And I think that it would predictably lead to more intentional trial misconduct at the trial if you are a defendant. And it doesn't matter how big the case is. And it frankly, I don't think should matter really that how you view the facts of this case. But if. A defendant who knows they're about to lose a trial, right, no matter what admitted liability or, you know, liability evidence is coming very poorly for them, has absolutely nothing to lose by getting up and closing and castigating their opponent, no matter how egregious it is in making on these arguments. Or in making improper arguments, then there's no reason for them not to do so besides the ethical side of things. But then there's no reason for them not to do so, because in those circumstances, the plaintiff will almost always get a recovery. But the problem is that that recovery was not the amount of damages they were legally entitled to. If their if their evidence was. It was considered by a jury that wasn't swayed by that passion or prejudice. So to me, I think that the. The first threshold question is what that standard should be. And based on the cases that I have cited, I think it's been longstanding law and justice, I mean, I understand the distinction drawn in Browning where you say this fanciful inherent prejudice theory, because the defendant didn't do anything intentionally there. The trial court misunderstood a sanction order. And I think that that that is a reason to then that the cross court in my reading reached a different conclusion is because where they said that it creates a game of catch me if you can with this kind of intentional misconduct, where you're not going to be able to prove that prejudice or to force the party that was not in the wrong to prove that prejudice. I think the way that you harmonize those two opinions and and I think it's a a wise distinction that has been present in our in our jurisprudence since the very beginning is that we can't control everything. And just because the trial court's always going to make a mistake somewhere, right, because they're human, it's laws hard. And so if you were to reverse every time a trial court made a mistake, we wouldn't have any any judgments. And you can't control that. So that's where I think that like showing the real prejudice makes sense. But. When you but you can control the trial process, the systems of trial, the integrity of the trial process, and when a party makes intentional efforts to undermine that process, I don't think it should be the law. That the aggrieved party has to prove something that they cannot prove just no matter what, no matter what the facts are. You know, I think we understand your argument. I think your time is up. Understood. So make sure you have time for rebuttal. I will. Unless there's any questions, I'll say no time for rebuttal. May I ask any other questions? No, no. All right. Miss Patricia. Good afternoon, your honors. Irina Dmitrieva, on behalf of Spansolik and Sons Funeral Home and individual defendants. Your honors, this matter involves a three day jury trial during which the jury heard the testimony of eight witnesses. And in the course of trial, the jury had a chance to observe the witnesses demeanor, their tone and manner of testifying and to assess their sincerity and credibility. And upon a short deliberation, the jury returned. I don't I don't see. Counsel. Yes, Mr. No question. Are you still there? I am. I apologize. Thank you. Upon the short deliberation, the jury returned the verdict in plaintiff's favor, assessing $40,000 in damages in ruling on plaintiff's post trial motion. The trial judge agreed. We know about the facts. So, yes, Castle says we should find when you look at everything altogether, this was all an intentional act and that we should reverse because there's no way to determine whether the jury was influenced by the conduct of defense counsel. Right, so we disagree with the standard on review that the that counsel advocates for. And first of all, obviously, there is no finding of intentional misconduct and would take a very strong objection to the even, you know, suggestion that there was an intentional misconduct. Counsel spoke mostly in general terms. There were very few specifics. The two specifics that I jetted in my notes was one during the opening statements, there was a slide that's not in the record on appeal that accidentally was displayed. Well, we don't know if it's accidentally. Apparently, it was on for quite a while. And it shouldn't have been. I mean, why? We found things like that improper in other cases, in criminal cases. If somebody had a slide that was potentially prejudicial and it shouldn't have been there, we brought it to the attention, you know. So. I have several responses. If your owner would have just, you know, indulge me with a little patience. So, I mean, there is a quick response and a more expanded response relating to the plaintiff's theory of the case. The quick response about the technicalities of what happened at trial is that the trial judge requested the slides, the demonstratives. Judge has a rule providing that parties should provide it 24 hours in advance, to which plaintiff's counsel strenuously objected. And he stated that he does not want defendants to see his slides in advance. And therefore, defendants would not be able to exchange their slides with plaintiff's counsel 24 hours in advance. So everybody agreed that the slides would be exchanged about an hour in advance before trial starts, which time was even shortened because, you know, it was even shorter than one hour before the opening statements. Then the counsel expressed his objection. This slide concerned an issue whether plaintiffs had a choice to go to a different... As I understand it, I have not seen the slide. It's not in the record of an appeal. So we only know from description of what happened. Now, it was... Can we just stop there? It's a pellant's burden to put in the record. We don't have the PowerPoint slide. We don't even know what it looked like. The counsel, but it's a recurrent complaint that there were a couple of questions asked in alleged violation of a motion in Limine, asking whether plaintiffs could have gone to a different funeral home. So my understanding, I don't know for sure that slide might have related to that topic. Now, first of all, it was not a clear violation of a motion in Limine. Why? Because the motion in Limine concerned barring evidence regarding comparative negligence and mitigation of damages. So plaintiff's counsel interpreted as saying, well, when you say that plaintiffs could have gone elsewhere, you are saying that they somehow at fault for not mitigating their damages. But that was not why. That's not how defendants understood that evidence. There was a real issue here with proximate causation. And it was a trial judge noted the story was not very coherent. It was very hard to understand what was the plaintiff's theory on proximate cause, because the case concerns literally about a four week delay in paperwork in filing the completed death certificate with the registrar's office. So plaintiff expected the ashes to receive the ashes on April 18th. And instead, the burial happened about two, three weeks later on May 9th. Right. But the plaintiff's theory of damages did not concern this relatively short period of time when there was a mishap with the paperwork. Plaintiffs wanted to expand their damages beyond and for the rest of their lives. How? Because plaintiffs, and it's undisputed, made an independent decision to no longer cremate, but to bury. And they had to explain this decision to the jury, how like a two, three week delay with paperwork during COVID resulted in such a drastic change in decision, how to dispose of remains. And the theory of the case was that even though the tort of tortious mishandling of remains is a negligence tort, you know, we are going to present the case as an intentional tort. It's going to be a case about intentional lies, intentional dishonesty. And they said because defendants, not just one person, not two persons, but multiple employees of this funeral home intentionally lied to us during the two week period of time when we tried to determine, you know, what happened with the certificate, we lost trust in the funeral home. And we were afraid that if we proceed with the cremation, then we don't know whose ashes we are going to receive, which is a very inflammatory allegation. And so this intentional lies was relevant to a loss of trust. And from defendants standpoint, the evidence that they stayed even after two weeks of those intentional lies and alleged cover ups, they still chose to stay with the same funeral home. They chose to trust the funeral home with transporting the mother's remains to the burial site. And afterwards, the family... I think you're going way off topic here. No, but the topic. So my point is that it was not a clear violation of that motion in Limine, because the slide was relevant to proximate cause, to rebutting the theory of proximate cause to say, but you stayed with... You didn't go to other funeral homes, did you? Not in the sense that, oh, you should have gone, you should have mitigated damages. No, in the sense of, oh, you never lost trust. So your theory of proximate cause doesn't really work. You never lost trust. But, you know, unfortunately, that's not how the trial court understood it. And the trial court said, remove the slide. You know, but the point being is that the slide was there displayed not because of intention. You know, there was no, no, never intention to violate the motion in Limine. Well, you're saying there was no finding of intention of conduct. Right. And we just even had more time. So, you know, was there any decision by the court of any intentional conduct by any attorney? No, there was not. There was not. And the second point that counsel mentioned about, you know, emotional testimony of Spencer Leak on the stand. I mean, that was also relevant to plaintiff's theory of the case because, you know, it was not just lies in this particular case. The counsel in closing, you know, kind of brought it home. He said three different people lied. That's not a mistake. It's a standard operating procedure. And it's on record five five hundred sixty seven. And so in the opening, you know, counsel said the very first reason we're suing Leak and Sons Funeral Home is that they chose to break the rule that you must never lie to your customers. So that goes beyond, you know, the particular case. And it's kind of like a more general statement that this funeral home covers up, you know, it's mishaps. It lies to customers. It's a standard operating procedure. And what are you saying? Because they made mistakes, too. And then you made mistakes. And so, no, I'm explaining why some evidence to which counsel objects came in. Right. And counsel also stated if you don't get the job done, funeral home, you don't take the money. And so when you look at the questions in response to which the emotional testimony came in, they are directly in response to plaintiff's theory of the case. And this is on record for eighty one eighty six. And the questions are you have been accused repeatedly of being a liar. How do you respond? The family alleges they were given false information on purpose. What happened? Did you lie to the sisters? Did you observe any of your employees lie to the sisters? And so it's in response to those questions that Spencer League explained, no, it was not our standard operating procedure to lie to our customers. Covid happened. You know, this is you know, these are the circumstances that are unforeseeable. You know, the staff shortage, people were afraid to come to work. We had limousine drivers answering the phones. So it was just a mistake. It was innocent mistake. And so, you know, the very testimony of which plaintiff complains, it was in direct response to the theory of the case. And I mean, and that's our system of justice where, you know, when we defendants should be able to respond, which is the case. I just want to know. This poor woman dies and she her remains stay at Spencer League Funeral Homes, not for three days, not for four days, not for one week, but four weeks. Didn't anybody there think, hmm, there's something wrong here? Why do we have these remains for so long? I mean, that to me was the thing that just really was amazing. I can't imagine that nobody thought to call the family and say, hey, you know, what's going on here? So the family could say, hey, we don't have the right paperwork or do you have the right paperwork with, you know, let's get our act together. Four weeks is a long time to keep remains in storage someplace at a funeral home. And it just seems to me that somehow somebody should have noticed it and done something about it. And they didn't. Yes. And all this evidence came out during plaintiff's case. And that is why in this case we have a verdict in plaintiff's favor. And the only question is really about the amount of damages. And the trial judge, you know, trial judge presided over the case and presided over the testimony of the witnesses and those intangible components of trial that don't really appear on the cold record before this court. And so plaintiffs absolutely were able to elicit all this evidence and to ask the questions and the sisters testified at length about their frustration. And the jury heard their testimony and they assessed that amount of damages. And it's just on this appeal before this court, the standard is very differential to the trial court and to the jury's verdict. And the jury's verdict regarding damages could be overturned only if it's the jury is not assessing an element of damages, if it's against the manifest weight of evidence or if the jury's verdict is a result of passion or prejudice. Right. And that's the standard. It's a very high standard. And the trial judge did not see any passion or prejudice and he presided over the whole trial. He saw the jurors reactions to lawyers behavior. He presided over the evidence. And the standard we use to review all this is abusive discretion, correct? Yes. Yes. So I don't have any other questions. Yeah, I think you're wondering, and so unless there are any other questions, we request that the judgment of the circuit court be affirmed. It's been a posting model. Yeah, I think and I'll try to be very brief in terms of the elements of the tort, it's not that it's just negligence and then the distinction drawn between whether the misstatements were lies or were negligent or intentional. It was never what I explained to the jury is that it doesn't matter because they shouldn't have said the statement at all without knowing it was true. Our theory of the case was not to the extent this matters at all. It's not that they looked at the file and intentionally lied to the plaintiff. What happened is that they weren't looking at all and just saying this generic excuse of, oh, it's held up by the doctor without looking and finding out. And that's why it's repeated three times in a row to her when she knows it's not true by the second and third time. And it was and the reason they didn't get their mother buried is because they didn't think they get the right if they're that disorganized and don't know what's going on and don't know she's there. How can they ever trust they get the ashes back? I mean, that's the heart of the case. I think that in terms of the prejudice of and I think this is recognized in Lyons v. Lawrence and also the Ohio Railroad, I might begin a case name wrong. That's cited. That's quoted by Croft. It's it's one of those cases. It's stated, well, look, maybe this in Lyons v. Lawrence is the case where the trial where the trial court was reversed after the plaintiff's attorney. Old case from the 1860s. Where the case was reversed after the plaintiff's attorney poured refreshments for the jury and offered to pour the jury water in closing. It can be summed up as just saying, look, we just can't have this kind of stuff happen at trial. And in one of those cases, the court commented something effective, maybe a prejudice to jury. Maybe it didn't. If there was no prejudice, there'll be remand and they'll get the same results and there's no. Prejudice sustained to the defendants of look, if that's the amount of damage is ten thousand dollars, there's no prejudice sustained to them that is unjust by sending us back to go get ten thousand dollars again. Maybe we'll get less. On the other hand, there's a severe prejudice to us if. If prejudice or passion is the reason we got the verdict that we did, I think that in Tucker, they talk about depriving the plaintiff of the opportunity to have their case presented to the jury. We were deprived of the opportunity to to submit our case to a jury that did not have its verdict tainted by these attempts. Whether they were successful, again, nobody found any taint, the court didn't. And you need to show an abuse of discretion by the court. I mean, I don't want to take it, you just have a minute or so left, so. Yeah, and so I think that I understood, I think the abuse of discretion was in not applying the cumulative error standard properly and in not applying the standard in this distinction between and between misconduct and trial court error properly. Obviously, that was only error if this court agrees with my the standard that I think. Apply. Wrapping up the last thing I want to just point out in terms of the jury issue where we have these conflicting cases on whether or not there is prejudice sustained by the loss or peremptory challenge in Brunson, when the court says this would open up any verdict to question whenever there is a four cause challenge. I do just want to point out that's not the case because that's an abuse of discretion still applies there as well. And so I think that our trial system would become fairer by recognizing the prejudice that is sustained when a peremptory is wrongfully denied and that knowing that that discretion will be reviewed will cause there to be less abuses of discretion in the first place. And so I think this court for its time and unless there are any questions, I know I raised many other errors, but unless there are any questions for me, I think those are the most important things. All right, well, thank you both very much. We've read your excellent briefs and we've heard your excellent arguments for your clients. As I said, we've read the record, we've read the cases and we've read the briefs. We've heard your oral argument and we'll take this case under advisement. Now, for this case, this court is adjourned. Thank you.